UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAMEN J. HORMANN,

        Plaintiff,

  v.

CITY OF ZANESVILLE, *et al.*

        Defendants.

Case No. 2:19-cv-1329
Judge Sarah D. Morrison
Chief Magistrate Judge Elizabeth A. Preston Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of a Motion for Summary Judgment, purportedly filed by "all Defendants." (ECF No. 31.) After Plaintiff Damen Hormann failed to timely respond to Defendants' Motion, the Court ordered Mr. Hormann to file any response within seven days thereafter, and show cause why his untimely filing should be accepted. (ECF No. 34.) Mr. Hormann failed to acknowledge or respond to the Court's order in any way. Accordingly, the pending Motion for Summary Judgment is ripe for consideration. For the reasons set forth below, the Motion (ECF No. 31) is **GRANTED**.

I.    BACKGROUND

    A.    Factual Background

On April 11, 2017, a woman called 9-1-1 from the parking lot of a bar and restaurant in Zanesville, Ohio. (Starkey Aff. ¶ 3, ECF No. 31-1.) The woman

1

indicated that Mr. Hormann, her ex-boyfriend, had taken her car without her permission. (*Id*. *See also* Faulkner Letter Report, 2, ECF No. 13-9, PAGEID # 183–200.) She further reported that Mr. Hormann was intoxicated and did not have a valid driver's license. (Starkey Aff. ¶ 3.) Officers Shane Starkey and James Ellis, of the Zanesville Police Department ("ZPD"), were dispatched to the scene. (*Id*.) While Officers Starkey and Ellis spoke with the woman, Mr. Hormann drove through the parking lot in the stolen vehicle. (*Id*. at ¶ 4.) According to Mr. Hormann, he saw the officers and decided not to stop. (Compl. ¶ 10, ECF No. 1.) Officers Starkey and Ellis radioed dispatch, requesting assistance. (Starkey Aff. ¶ 4.)

ZPD Officers Marcus Pisch and Kyle Brookover quickly identified the stolen vehicle on a nearby street. (Pisch Aff. ¶ 3, ECF No. 31-3.) A slow speed chase ensued, during which Mr. Hormann drove through a field, failed to stop at stop signs, and drove left of the center line. (*Id*.) Mr. Hormann eventually pulled into the parking lot of a fast-food restaurant about one mile from where the chase began. (*Id*.) A car backing out of its parking space "boxed [Mr. Hormann] in." (*Id*.) Mr. Hormann then exited the vehicle and set out on foot. (*Id*.) Officer Pisch ordered Mr. Hormann to stop. (Faulkner Letter Report, 2.) Instead, Mr. Hormann shouted "Fuck you!" and began to run. (*Id*.) Mr. Hormann ran onto the grounds of a nearby apartment complex, followed by Officers Pisch and Brookover, also on foot. (Pisch Aff. ¶ 3.) Officers Starkey and Ellis arrived on-scene in their cruiser and drove into the apartment complex parking lot. (Starkey Aff. ¶ 4.) The Officers' cruiser made contact with Mr. Hormann, although it is in dispute as to whether Mr. Hormann

2

slid into the cruiser or the cruiser hit him while moving. (*Compare* Starkey Aff. ¶ 4 *with* Compl. ¶ 13.A.) Thereafter, Mr. Hormann "lost his balance, fell, got up ran and fell a second time." (Starkey Aff. ¶ 4.) The first fall was on blacktop, but the second was in a "grassy area" adjacent to an apartment building. (Faulkner Letter Report, 2.) Video footage shot from the dashboard camera of ZPD cruiser #8 (driven by Officer Joseph Huston) shows a pool of water on the blacktop bordering the grassy area. (Mot. for Summ. J. Attach. 11, 7:43:57 PM.[1] *See also* Huston Aff. ¶ 5, ECF No. 31-5.)

Officers Pisch and Ellis held Mr. Hormann on the ground, preventing him from running again. (Faulkner Letter Report, 2.) Mr. Hormann resisted arrest by "wiggling and twisting his body." (Pisch Aff. ¶ 4.) Officer Pisch held Mr. Hormann "down by the head area" while other officers secured the rest of Mr. Hormann's body. (*Id.*) For at least some time, Mr. Hormann was face-down in the grass. (Starkey Aff. ¶ 4; Huston Aff. ¶ 3.) Throughout, Mr. Hormann held his hands underneath his body, out of view of the ZPD officers, and refused to display them. (Starkey Aff. ¶ 4.) The officers were concerned that Mr. Hormann was holding, reaching for, or concealing a weapon or contraband, and ordered that he "give [them his] hands, stop resisting." (*Id. See also* Pisch Aff. ¶4; Brookover Aff. ¶ 3, ECF No. 31-4; Bollinger Aff. ¶ 4, ECF No. 31-6.)

Over a span of approximately 49 seconds, the officers delivered a series of knee strikes and closed hand strikes to Mr. Hormann's body, along with verbal

---

[1] Attachment 11 was manually filed with the Clerk's Office. (*See* ECF No. 32.) Pinpoint citations to Attachment 11 reflect timestamps on the video footage.

3

commands, in an effort to secure Mr. Hormann's hands in cuffs. (Starkey Aff. ¶ 4; Brookover Aff. ¶ 3; Huston Aff. ¶ 4; Faulkner Letter Report, 3. *See also* Mot. for Summ. J. Attach. 11, 7:43:47 PM–7:44:47 PM.) In addition, video footage clearly shows Officer Pisch strike Mr. Hormann in the back of the head with a hand-held firearm. (Mot. for Summ. J. Attach. 11, 7:44:06 PM.) However, neither Defendants' expert report nor the portion of the use of force investigation included therein mention this blow. (*See* Faulkner Letter Report, 3, 7.) Further, all officers on-scene testify that "at no time did he or did he witness any Zanesville police officer strike Hormann in the back of the head with the handle of a Taser," as alleged in Mr. Hormann's complaint. (Starkey Aff. ¶ 5; Ellis Aff. ¶ 4; Pisch Aff. ¶ 5; Brookover Aff. ¶ 4; Huston Aff. ¶ 9; Bollinger Aff. ¶ 5; Rice Aff. ¶ 5, ECF No. 31-7. *See also* Compl. ¶ 13.B.)

After the officers gained control of Mr. Hormann's hands, he was handcuffed and placed under arrest. (Huston Aff. ¶ 4.) Officer Rice arrived at the scene as Mr. Hormann was being handcuffed. (Rice Aff. ¶ 3.) He was eventually secured in the back of Officer Huston's cruiser and transported to the city jail. (Huston Aff. ¶ 5.) At one point during the transport, Mr. Hormann complained that he could not breathe. (*Id. See also* Attach. 11, 7:52:04 PM.) Officer Huston observed that Mr. Hormann was "taking very deep breaths in and out, and was not wheezing while breathing." (Huston Aff. ¶ 7.) Officer Huston "did not think it was unusual for Hormann to be out of breath, as he was told Hormann had been running from the location where

4

his vehicle was stopped to the location where he was cuffed, and Hormann had been struggling with four or five officers trying to handcuff him." (*Id.* ¶ 6.)

After arriving at the city jail, Officer Huston got out of the cruiser. (Attach. 11, 7:57:14 PM.) Alone in the vehicle, Mr. Hormann yelled "I can't fucking breathe, Jesus Christ!" (*Id.*, 7:57:20 PM.) Mr. Hormann repeated his complaint when Officer Huston opened the cruiser door. (*Id.*, 7:57:49 PM–7:58:06 PM.) One of the officers responded, "If you're talking, you're breathing." (*Id.*) The officers proceeded to escort Mr. Hormann inside. While passing in view of the cruiser's dashboard camera, Mr. Hormann bent at the waist for several seconds and yelled as the group continued forward. (*Id.*, 7:58:27 PM–7:58:46 PM.) Officer Huston noticed a small scrape on Mr. Hormann's hand, but maintains that "Hormann did not request to go to the hospital, and that he had no information suggesting Hormann was seriously injured or that Hormann needed medical treatment." (Huston Aff. ¶¶ 5, 7.)

Mr. Hormann was booked into the jail (despite his noncooperation) at 8:00 PM and placed in a cell "directly adjacent to the booking desk . . . ." (*Id.* ¶ 8; Phipps Aff. ¶ 8, ECF No. 31-10.) Before Mr. Hormann was released at 10:40 AM the following morning, he was "checked on/observed in his observation cell" a minimum of nine times. (Phipps Aff. ¶¶ 7, 8.) Twice, jail records expressly noted that Mr. Hormann was "breathing normal." (Faulkner Letter Report, 13.) In addition, Officer Pisch, among others, visited Mr. Hormann in the jail to serve traffic citations. Officer Pisch noted that "Hormann indicated his ribs were hurting and looked like he was in a little bit of pain[,]" but that Mr. Hormann "did not request medical

5

treatment." (Pisch Aff. ¶ 9.) Officer Pisch confirmed that the corrections officers on duty were aware of Mr. Hormann's complaints. (*Id.*)

Mr. Hormann visited his physician the same day he was released. (Phipps Aff. ¶ 6.) A chest x-ray showed a collapsed lung.[2] (*Id.*) Mr. Hormann was instructed to go to the emergency room that day; he waited until the following day. (*Id.*) When Mr. Hormann did present at Genesis Emergency Department on April 13, 2017, a chest tube was placed and he was admitted for overnight observation. (*Id.*) Emergency Department records reproduced in Defendants' expert report indicate that Mr. Hormann's "lungs are clear. He is in no respiratory distress. He is actually well." (Faulkner Letter Report, 13.) Further, Mr. Hormann "denie[d] [loss of consciousness] or having any other injuries with the exception of scrapes on his hands." (*Id.*, 14.)

### B. Procedural Background

Mr. Hormann filed this action on April 9, 2019, against the following defendants: The City of Zanesville (the "City"); Jeff L. Tilton, individually and in his official capacity as Zanesville City Mayor; ZPD; Tony Coury, individually and in his official capacity as Zanesville City Police Chief; the following ZPD officers, individually and in their official capacities, Shane Starkey, Kyle Bookover, Marcus

---

[2] Officer Phipps' affidavit indicates that the chest x-ray revealed a "pneumothorax." Pneumothorax is commonly known as a collapsed lung. Mayo Clinic, Pneumothorax Symptoms & Causes, https://www.mayoclinic.org/diseases-conditions/pneumothorax/symptoms-causes/syc-20350367 (last visited Sept. 16, 2020). Symptoms include shortness of breath and chest pain. *Id.* Pneumothorax is often treated by placement of a chest tube, which removes excess air from the chest cavity, allowing the lung can to re-expand. Mayo Clinic, Pneumothorax Diagnosis & Treatment, https://www.mayoclinic.org/diseases-conditions/pneumothorax/diagnosis-treatment/drc-20350372 (last visited Sept. 16, 2020.)

Pisch, Bryon Bollinger, Joseph Huston, James Ellis, Scott Comstock, Christopher Rice, John Doe #1, and John Doe #2; and the following corrections officers, individually and in their official capacities, John Doe #3 and John Doe #4. (Compl.) The Complaint asserts five claims: excessive force, pursuant to 42 U.S.C. § 1983, against the City, ZPD, and the ZPD officers and corrections officers (Count One); reckless indifference to serious medical needs, pursuant to 42 U.S.C. § 1983, against the City, ZPD, and the ZPD officers and corrections officers (Count Two); policies and procedures that created a substantial likelihood for deprivation of constitutional rights, pursuant to 42 U.S.C. § 1983, against the City (Count Three); battery in violation of Ohio common law, against the City and the ZPD officers (Count Four); and gross negligence or willful and wonton misconduct in violation of Ohio common law, against the City and the ZPD officers and corrections officers (Count Five). (*Id.*)

When he filed the Complaint, Mr. Hormann was not represented by counsel. (*Id.*) After the Magistrate Judge issued an order directing him to show cause why the action should not be dismissed for failure to timely serve any of the defendants, Mr. Hormann retained counsel. (*See* ECF Nos. 3–8.) All of the named defendants (*i.e.*, all defendants excluding John Does #1–4) filed their Answer on August 26, 2019. (ECF No. 22.) Thereafter, the parties (again excluding John Does #1–4) submitted a joint proposed case schedule, as required by Federal Rule of Civil Procedure 26(f). (ECF No. 24.) The Court adopted the parties' proposed case schedule, including a deadline of December 30, 2019, for any motion to amend the

pleadings or to join additional parties, and a deadline of June 1, 2020, for completion of all discovery. (ECF No. 25. *See also* ECF No 24, 2, 3.)

The case sat idle until the instant Motion for Summary Judgment was filed on July 28, 2020. (ECF No. 31.) Mr. Hormann did not move for leave to amend his Complaint or to substitute the names of defendants John Doe #1–4. Mr. Hormann also failed to respond to either the Motion for Summary Judgment or to the Court's subsequent show cause order (ECF No. 34). The Court further notes that Mr. Hormann's counsel has been entirely unresponsive to defense counsel's multiple attempts to discuss setting this case for mediation.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party). Even where, as here, "a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). *See also Smith v. Hudson*, 600 F.2d 60, 64–65 (6th Cir. 1979).

### III. ANALYSIS

As an initial matter, the Court finds that all claims against John Does #1–4 are properly dismissed for Mr. Hormann's failure to prosecute. A district court has inherent authority to dismiss a plaintiff's action because of its failure to prosecute. Fed. R. Civ. P. 41(b). *See also Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–31 (1962). "This measure is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (internal quotations and alterations omitted).

The Court of Appeals for the Sixth Circuit directs a district court to consider the following four factors in determining whether to dismiss an action for failure to prosecute:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting *Knoll*, 176 F.3d at 363). "Although typically none of the factors is outcome dispositive, . . . a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Id*. (quoting *Knoll*, 176 F.3d at 363).

Since filing this action more than 15 months ago, Mr. Hormann has failed to effect service over John Does #1–4. Fed. R. Civ. P. 4(m). Mr. Hormann also failed to amend his Complaint to identify John Does #1–4, despite the incredible ease of ascertaining their identities. *Cf. Choice v. Coleman*, No. 08-11762-BC, 2009 WL 2222589, at *2 (E.D. Mich. July 23, 2009) (reiterating a plaintiff's "duty of making reasonable efforts to identify, serve, and join the actual parties") (citing *Stratton v. City of Boston*, 731 F. Supp. 42, 45 (D. Mass. 1989)). Upon review of the docket, it appears that Mr. Hormann has abandoned his claims, particularly with respect to John Does #1–4. As a result, Mr. Hormann's claims against John Does #1–4 are **DISMISSED WITH PREJUDICE** pursuant to Rule 41(b).

The Court next notes that several of the defendants named in Mr. Hormann's Complaint are not the true parties in interest. It is well-established that "[a] suit against an individual in his official capacity is the equivalent of a suit against the

10

governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, [71] (1989)). The same is true with respect to administrative departments of governmental entities, such as ZPD. *See Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1080 (S.D. Ohio 1987). As a result, each of Mr. Hormann's claims brought against individuals in their official capacities, as well as those brought against ZPD, will be considered as claims against the City.

Finally, Officers Scott Comstock and Christopher Rice assert that they did not participate in the events giving rise to Mr. Hormann's claims (*see generally* Rice Aff.; Comstock Aff., ECF No. 31-8) and, as such, are entitled to summary judgment. Mr. Hormann has failed to refute their assertions. Further, although they do not raise it in their Motion, the Court notes that Mayor Tilton and Chief Coury are not alleged to have had any personal involvement in the events giving rise to Mr. Hormann's claims. (*See generally* Compl.) Mr. Hormann cannot assert claims against Mayor Tilton and Chief Coury solely on the basis of their supervisory positions. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). The motions for summary judgment on behalf of Officer Comstock, Officer Rice, Mayor Tilton, and Police Chief Coury are **GRANTED** in their entirety.

Whether the City or Officers Starkey, Brookover, Pisch, Bollinger, Huston, or Ellis, in their individual capacities (hereinafter, the "Officers"), are entitled to summary judgment requires additional discussion.

### A. Section 1983 Claims (Counts One, Two, and Three)

Mr. Hormann seeks relief for the alleged deprivation of his constitutional rights resulting from force used against him in the course of his arrest and indifference to his serious medical needs thereafter. (*See* Compl.) With respect to the force used against him, Mr. Hormann alleges that the following conduct on the part of the Officers constituted the deprivation:

- A. Knowingly endangered the Plaintiff by side-swiping Plaintiff with the passenger side of the police officer's moving vehicle;
- B. Struck Plaintiff on the back of the head with handle of taser;
- C. Held Plaintiff face first into water-soaked ground with full force of Police Officers [sic] body weight depriving Plaintiff of oxygen for long periods of time, temporarily rendering Plaintiff unconscious;
- D. Struck Plaintiff in the ribs with knee strikes and close-fisted punches causing ribs to break and puncture Plaintiffs [sic] lungs;
- E. Stood on top of Plaintiff's head holding him face down into water-soaked group further depriving him on oxygen, continuing to render plaintiff unconscious; and
- F. Recklessly used excessive force in order to cause Plaintiff injury.

(Compl. ¶ 13.) Mr. Hormann further alleges that the Officers "wrongfully failed to assure that Plaintiff received appropriate medical treatment" when he was experiencing difficulty breathing. (*Id.* ¶ 14–16.)

Mr. Hormann alleges that the City "failed to adequately train Defendants Police Officers and Correction Officers in proper arrest and detention procedures . . . ." (*Id.* ¶ 19.) In addition, Mr. Hormann alleges that the City's "policies and procedures . . . created a substantial likelihood that prisoners or

12

detainees would be subject to the use of excessive force." (Compl. ¶ 22.) Mr. Hormann raises issue with the following, in particular:

> [That the City]
>
> A. Allowed policies and procedures to continue in force and effect which resulted in the use of outrageous and excessive force against Plaintiff,
>
> B. Had a custom and practice of failing to independently and adequately investigate complaints of excessive force,
>
> C. Had a custom and practice of failing to effectively discipline or retrain police officers who wrongfully utilized excessive force,
>
> D. Failed to establish appropriate policies and procedures to address and correct the repeated use of excessive force by police officers in traffic stops,
>
> E. Allowed the continuance in force and effect of policies and procedures which failed to protect detainees who had sustained injury from the reckless indifference of City's agents, servants and employees in its Police Department to their serious medical needs.

(Compl. ¶ 23.)

### 1. Municipal Liability

Section 1983 does not incorporate doctrines of vicarious liability or *respondeat superior*. *Pembaur*, 475 U.S. at 479 (1986). As a result, the only way for Mr. Hormann to establish the City's liability under § 1983 is to prove that a City policy or custom caused the constitutional injury. *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Beyond alleging a list of theoretical wrongs in his Complaint, Mr. Hormann has not identified a single policy, custom, practice, or procedure *actually in place* at the City that led to his injury. The City argues that this failure is fatal to Mr. Hormann's claim. *See Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987) (holding that, for a plaintiff to establish municipal liability

13

under § 1983, he "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy") (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)) *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001). Mr. Hormann offers no argument in response. The City's motion for summary judgment on Mr. Hormann's § 1983 claims (Counts One, Two, and Three) is **GRANTED**.

### 2. Individual Liability

Officers Starkey, Brookover, Pisch, Bollinger, Huston, and Ellis raise the defense of qualified immunity to Mr. Hormann's § 1983 claims. "When the defendant raises qualified immunity, the plaintiff bears the burden of proving that the defendant is not entitled to summary judgment." *Davenport v. Causey*, 521 F. 3d 544, 550 (6th Cir. 2008). An official is entitled to the defense of qualified immunity so long as he has not violated a "'clearly established statutory or constitutional right[] of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). This is a purposefully high bar for a plaintiff. Qualified immunity is intended to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Accordingly, "it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

For a right to be 'clearly established,' "existing precedent must have placed the statutory or constitutional question beyond debate[,]" although there need not

14

be a case "directly on point." *Id.* at 741. The right must be dictated by "'controlling authority in the[] jurisdiction at the time of the incident' or [by] 'a consensus of cases of persuasive authority such that a reasonable [official] could not have believed that his actions were lawful.'" *Id.* at 746 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). *See also Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 589. Moreover, the "right" at issue must be "so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 590 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "This requires a high 'degree of specificity.'" *Id.* (quoting *Mullenix*, 136 S. Ct. at 309). That is, there must exist a precedent where "an officer acting under similar circumstances . . . was held to have violated" the constitutional provision at issue. *White*, 137 S. Ct. at 552.

The qualified immunity analysis therefore involves two steps: (1) determine whether the facts plead constitute the violation of a constitutional right, and (2) determine whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Mr. Hormann's § 1983 claims asserted against the Officers both fail on the first step.

### a) Mr. Hormann cannot establish a violation of his constitutional right to be free from excessive force.

Mr. Hormann alleges that the Officers violated his constitutional right to be free of excessive force. Excessive force claims are analyzed under the Fourth Amendment's protection against unreasonable seizure. *Kostrzewa v. City of Troy,*

15

247 F.3d 633, 639 (6th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "In determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable." *Id.* (citing *Graham*, 490 U.S. at 396–97). In doing so, the court "must balance the consequences of the individual against the government's interests in effecting the seizure." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). Although the inquiry is necessarily fact-specific, particular attention is paid to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Further, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* It is well-established that "[n]ot every push or shove" constitutes a violation of the Fourth Amendment. *Id.* (internal quotation omitted). Indeed, the law recognizes that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.*

    Based on the record now before the Court, Mr. Hormann cannot establish that the Officers violated his constitutional rights. The Officers observed Mr. Hormann commit numerous traffic violations while driving a stolen vehicle, intoxicated and without a valid driver's license. When the vehicle was boxed in, Mr. Hormann abandoned it on foot, yelling profanities at the police officers he had just

16

engaged in a mile-long pursuit. The Officers continued to pursue Mr. Hormann on foot and in cruisers. When the Officers approached him after he fell on the grass, Mr. Hormann refused to produce his hands, despite numerous verbal commands. There is no allegation or evidence that the Officers applied any force against Mr. Hormann after he was secured in handcuffs. Although the video evidence does substantiate Mr. Hormann's allegations that he was struck in the back of the head and that he was held down on wet ground, the Officers' use of force against him was objectively reasonable in light of the circumstances. The Officers' motions for summary judgment on Count One are **GRANTED**.

> **b)** **Mr. Hormann cannot establish a violation of his constitutional right to be free from cruel and unusual punishment.**

Mr. Hormann further alleges that the Officers showed a reckless indifference to his medical needs. He asserts that this alleged wrongdoing constitutes a violation of his rights under the Fourth and Fourteenth Amendments. The Court interprets Mr. Hormann's Complaint, which he drafted and filed before he was represented by counsel (*see Jourdan v. Jabe*, 951 F.3d 108, 110 (6th Cir. 1991)), as alleging a claim of deliberate indifference to serious medical needs under the Fourteenth Amendment. *Richmond v. Huq*, 855 F.3d 928, 937 (6th Cir. 2018) (noting that the Fourteenth Amendment provides to pretrial detainees the same protection against cruel and unusual punishment that the Eighth Amendment provides to inmates).

17

To establish that officials were deliberately indifferent to serious medical needs, the courts analyze both an objective and a subjective component.[3] *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015). The Sixth Circuit has explained:

> To satisfy the objective component, [a p]laintiff must show the existence of a sufficiently serious medical need, meaning he is "incarcerated under conditions posing a substantial risk of serious harm." [*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (internal citations omitted).] A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore*, 390 F. 3d at 897).
>
> The subjective component is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 Fed. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, [511 U.S. at 836]). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003)).
>
> A prison official acts with deliberate indifference when "'the official knows of and disregards an excessive risk to inmate health or safety.'" *Harrison*, 539 F.3d at 518 (quoting *Farmer*, [511 U.S. at 837]). An official "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id*. Although "deliberate indifference entails something more than mere negligence," the Supreme Court has made clear "it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, [511 U.S. at 835.]

*Id*.

---

[3] Given intervening changes in the law, it remains an open question whether a pretrial detainee must also prove the subjective component of the Eighth Amendment deliberate indifference test. *See Richmond*, 885 F.3d at 938 n.3 (2018) (noting circuit split but declining to address the issue). The Court need not address this issue, given its determination that Mr. Hormann has failed to prove even the objective component.

The Officers argue that Mr. Hormann cannot prove that he had a serious medical need, or that any of the Officers knew of and disregarded that need. Beyond the bald allegations in his Complaint, Mr. Hormann offers no argument in response. His subsequent collapsed lung diagnosis is insufficient to establish the objective component when he was not exhibiting obvious symptoms and waited a full extra day to present to the emergency room, without consequence. *Cf. Colson v. City of Alcoa*, No. 3:16-cv-377, 2020 WL 2110441, at *27 (E.D. Tenn. Apr. 30, 2020) (clarifying that "when the medical need is not obvious, . . . verified medical evidence of the detrimental effect of a delay in treatment is required" to prove a constitutional violation). The Officers' motion for summary judgment on Count Two is **GRANTED**.

    **B.**    **State Law Claims**

The City and the Officers argue that they enjoy blanket immunity from Mr. Hormann's state law claims under Ohio's Political Subdivision Tort Liability Act, Ohio Rev. Code § 2744.01, *et seq*. Mr. Hormann offers no argument in response, and the Court sees no reason why the City and the Officers are not entitled to such immunity. The City's and the Officers' motions for summary judgment on the state law claims (Counts Four and Five) are **GRANTED**.

## IV. CONCLUSION

Based on the foregoing, Mr. Hormann has failed to establish a genuine issue of material fact, and the named defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment is **GRANTED**. Further, all claims against John Does #1–4 are **DISMISSED** with prejudice.

    **IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**